# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Zakaria Abinasser Yusuf, | Civ. No. 16-3961 (DSD/BRT) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jim Benson, Warden, | |
| Respondent. | |

Zakaria Abinasser Yusuf, Petitioner, *pro se*.

J. Michael Richardson, Esq. Hennepin County Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

Petitioner Zakaria Abinasser Yusuf has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1, Pet.) After a jury trial, Petitioner was acquitted of attempted first-degree premeditated murder, but convicted of attempted second-degree intentional murder, first-degree assault, second-degree assault, and possession of a weapon by a prohibited person. *See State v. Yusuf*, No. A14-1454, 2015 WL 4393390, at *1–2 (Minn. Ct. App. 2015). Petitioner was sentenced to 219 months in prison. *Id.* at *2. The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review. *See id.*

Petitioner alleges four claims in his petition: (1) the victim identified Petitioner in an unconstitutionally suggestive lineup; (2) the denial of Petitioner's motion to exclude

hearsay statements and photographic lineup evidence implicating Petitioner as the shooter was based on an unreasonable determination of the facts; (3) the rejection of Petitioner's insufficiency-of-the-evidence claim is contrary to federal law; and (4) the prosecutor knowingly used perjured testimony to obtain a conviction. (Pet. 5–10.) The first three claims were raised on direct appeal in state court, but the last claim was not. (Pet. 10–12.) Accordingly, Petitioner asks to stay this case while he pursues his unexhausted claim in state court. (*Id.* at 15.) The Respondent does not oppose a stay. (Doc. No. 7.) This Court recommends that the stay request be granted.

Federal district courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber*, 544 U.S. 269, 273 (2005) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). District courts can, however, utilize a "stay-and-abeyance" procedure. *Id.* "Under this procedure, rather than dismiss the mixed petition . . . , a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court." *Id.* at 275–76. This procedure arose as a way to deal with the "interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement," whereby "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 275.

The Supreme Court in *Rhines* cautioned that this procedure, "if employed too frequently, has the potential to undermine" the "twin purposes" of AEDPA to "reduce

delays in the execution of state and federal criminal sentences" and to "encourage[] petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a 'properly filed application for State post-conviction or other collateral review' is pending." *Id.* at 276 (quoting 28 U.S.C. § 2244(d)(2)). Thus, the Court instructed that the procedure should only be used if "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

Petitioner justifies his failure to exhaust by stating that he recently obtained the information needed to support his unexhausted claim, and the factual predicate for the claim is newly discovered. (Pet. 10.) Courts have found good cause under *Rhines* where the unexhausted claims arise out of newly-discovered evidence. *See Zornes v. Smith*, Case No. 16-cv-1730-PJS-KMM, 2016 WL 6650852, at *8 (D. Minn. Oct. 17, 2016) (collecting cases). There is no indication, so far as this Court can ascertain, that Petitioner has engaged in dilatory tactics. *See id.* at *9 (observing that the "Supreme Court's primary concern in *Rhines* was with dilatory behavior to delay execution in capital cases, and the Court noted that a non-capital petitioner will ordinarily have an incentive to obtain speedy relief") (citing *Rhines*, 544 U.S. at 278).

As for the potential merits, Petitioner's unexhausted claim appears to be a Fifth Amendment due process claim similar to that raised in *Napue v. Illinois*, 360 U.S. 264 (1959), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. These cases "stand for the proposition that the government may not allow perjured testimony at trial

3

to stand uncorrected if there is a reasonable chance that the testimony could have affected the jury's judgment." *Thomas v. Houston*, No. 4:11CV3161, 2013 WL 3766539, at *9 (D. Neb. July 16, 2013); *see also United States v. Dickerson*, 248 F.3d 1036, 1041 (11th Cir. 2001) ("A successful *Giglio* challenge requires that the defendant establish that the prosecutor 'knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony,' and that the falsehood was material.") (internal citation omitted). "To establish a due process violation based on the prosecutorial use of false testimony, a defendant must show that '(1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict.'" *United States v. Bass*, 478 F.3d 948, 951 (8th Cir. 2007) (quoting *United States v. Funchess*, 422 F.3d 698, 701 (8th Cir. 2005)).

In Petitioner's case, an officer testified at trial that he spoke with the victim at the hospital on the night of the shooting, and the victim "told him that he was standing in front of a store when two men approached him. One of the men, who [the victim] knew as T-Dot,[1] produced a gun and shot [the victim.] The officer testified that [the victim] definitely said T-Dot, and not T-Dawg." *Yusuf*, 2015 WL 4393390, at *5. A sergeant also testified that he spoke with the victim at the hospital following the shooting, who told the sergeant that he had known "T-Dot" for four months. *Id.* at *6. The following day, the sergeant spoke with the victim and showed him a photo lineup. *Id.* The victim "picked

---

[1] "T-Dot" is Petitioner's nickname. *Yusuf*, 2015 WL 4393390, at *1.

out appellant's picture without hesitation and stated 'That's the guy who shot me; that's T-Dot.'" *Id.* The victim testified that "the officers misunderstood what he said, and that someone named T-Dawg actually shot him." *Yusuf*, 2015 WL 4393390 at *6. Petitioner now argues, however, that the victim told the prosecutor that he "did not actually see the person who[] shot him." (Pet. 10.) Instead, according to Petitioner,

> [the victim] learned who the shooter may have been while . . . at the hospital the day after the shooting. When it was relayed to him who might have committed the shooting offense, he thought the individual said it was 'T-Dot' that shot him, so that's why he mentioned the name T-Dot to the Sergeant that interviewed him at the hospital. Because he was on some pain reliever medication, he misheard and confused the name 'T-Dawg' with T-Dot. Based on the circumstances, he gave the Sergeant the name T-Dot instead of the name T-Dawg that was relayed to him to be the shooter. At the time of the incident, [the victim] knew of Petitioner but Petitioner and him did not have an issue with each other.

(Pet. 10.) Since the jury apparently relied on the victim's identification of Petitioner as the shooter, Petitioner's claim that the victim never saw the shooter is potentially meritorious under *Napue*, *Giglio*, and their progeny. Therefore, a *Rhines* stay is appropriate.

*Rhines* cautioned that "[e]ven where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely." 544 U.S. at 277. Instead, district courts "should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. Therefore, Petitioner should be required to pursue his unexhausted claim in state court within thirty days, and then return to federal court thirty days after state court exhaustion is completed. *See id.*

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Motion for a Stay (Doc. No. 1) be **GRANTED**; and

2. Petitioner be required to pursue his unexhausted claim in state court within thirty days, and then return to federal court thirty days after state court exhaustion is completed.

Date: February 8, 2017.

<em>s/ Becky R. Thorson</em><br>
BECKY R. THORSON<br>
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **February 22, 2017**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.